Yes, we will continue with case number four, Smego v. Payne. Mr. Fine. Thank you, Chief Judge Wood, and may it please the court. My name is Daniel Fine. I represent the appellant Richard Smego. Mr. Smego is entitled to a new trial on his civil claims because the trial below was infected by two distinct but related errors. First, Mr. Smego was removed from court before the trial had concluded. Do we know that? I mean, it seems to me what we have here is a dispute of fact about whether it was before or not, because if you look at his statement, he indicates it's before, but then if you look at the district court's July 18, 2013 memo, basically, he says it's after. After the closing arguments and the jury was sent to deliberate, the court directed that he be transported back. And that's correct, Judge Wood. The distinction there, though, is that a trial is not over until the jury is discharged. But are you saying that it's... I just want to get your position clear, because if you're saying that it's impermissible to send somebody, whether it's Rushville or, for that matter, whether it's, you know, a prison, to send them back while the jury is deliberating, it seems to me that's a step beyond what Verser said. Verser said, you know, if you send them back, you know, maybe you can create a different line of communication. You can put them in the video room, or you can, you know, at least have an open phone line, or you can do things. Because when the jury goes back, you have no idea if the jury's going to deliberate for an hour or three days or something in between. That's correct, Your Honor. And Mr. Smigiel points to two distinct errors. The first error is that he was removed from court before the jury was even charged. But wait a minute. His Rule 10 motion just says that he was removed before the jury returned from lunch to receive the case and deliberate, and wasn't present for the end of the trial. Yes, Judge Rovner, that's correct. Including the reading of the verdict and the decision not to pull the jury, it doesn't state that he was not present for the charging instructions. Judge Rovner, I don't think there's any dispute that if Mr. Smigiel was removed before the jury received the case, on the facts of this case, that would mean before the jury was charged. Although this wasn't the focus of either party's briefing, when one looks at the transcript, the jury came back in after a break, and at that point, they did receive the instructions. And so viewing the record as a whole, the only way to interpret Mr. Smigiel's motion is that he was seeking confirmation that he was removed before the jury was charged. Okay, well, thank you for that. Thank you, Judge Rovner. But this issue, this distinction between when Mr. Smigiel was removed, relates only to the first grounds of error that Mr. Smigiel points to. The second ground for error is a violation of this court's holding in Verser v. Barfield. Because after Mr. Smigiel was removed in this case, he was held incommunicado. He was unable to communicate with court-appointed representatives. Well, but of course, Verser is a case where- Yes? Sorry. No, let me just say this. Verser was a case in which there was no lawyer. And I'm going to make two points here. Here we have the University of Illinois clinic students who were admitted to practice pursuant to court rule. And you argue, although I have trouble finding where this is evident one way or the other on the record, that they were completely unsupervised. Now, there may have been a professor in the courtroom, or there may not have been, or available by phone. So I don't know where we have a record that they were just out there winging it. And maybe that's a problem, maybe not, but where's the record? Well, Chief Judge Wood, I can take those questions in order if you'd like. Yeah, sure. So, Chief Judge Wood, the question of whether or not Mr. Smigo's representation should make a difference is one that Mr. Smigo addresses in his brief. But Mr. Smigo agreed to be represented by the clinic and the students. That's quite correct, Chief Judge Wood. But the question is, what did Mr. Smigo sign up for? The relationship between a counsel and  To the contrary, the historic roots of the right to counsel is of an able person, an able representative who stands beside you and subject to correction from the party, makes arguments and makes representations to the court. But this is a civil trial. It's possible to go through an entire civil trial without the plaintiff even being there. That is correct. Of course, under 28 U.S.C. 1654, Mr. Smigo had a statutory right to be present in court, which in the language of Freda versus California, the counsel is an appendage of the natural right of self-representation. In this case, the right that's actually codified. So when the district judge summarily decided, with no reason whatsoever, and I think that aspect is critical, to remove Mr. Smigo from the courtroom, the district judge made the choice to fundamentally alter what Mr. Smigo had signed up for. At the point that the district judge expelled Mr. Smigo from the courtroom, and again, for no reason whatsoever that can be discerned from the record, the only thing we can say for certain about the decision of whether or not to pull the jury is that it was not Mr. Smigo's. And the counsel who were in the room, or the representatives who were in the room, were not representatives that Mr. Smigo had authorized to speak to that. How far do you take that, that any time a lawyer is in a civil case in the courtroom and doesn't pick up the phone and check with the client, that lawyer's decisions, whether it's to object to evidence or whether it's to see if the jury should be polled or whatever, isn't attributable to the client? That would be a very strong position to take. And it's not the position that Mr. Smigo takes. The position that Mr. Smigo takes is that if a litigant were expelled from the courtroom for no reason, at that point the lawyer is not authorized to continue without the party. Unless the party has authorized it. Where does it say that? Where does what say that, Judge Wood? If the litigant is asked to leave the courtroom, you're saying that the lawyer somehow ceases to be the litigant's agent. And I don't know where that rule of law can be found. I think it can be found in footnotes 37 to 40 of Ferretta itself. But Ferretta is in a criminal context where you've got a constitutional right to counsel. That's correct, Chief Judge Wood. But in the footnotes 37 to 40, the court reviews the history of the right to counsel as it crossed the Atlantic and looks at early founding constitutions as well within the original colonies and finds that in both the civil context and the criminal context, there is a right to self-representation that could not be being imposed on the litigant. But you can't do both at the same time. And Mr. Smigo had consented to counsel. There was a little bit of an exchange, actually. The judge wasn't sure, but it becomes quite clear he wants counsel and he gets it. That's correct, Your Honor. He did consent to counsel, but the question is, what did he consent to? Mr. Smigo's position is that he consented to that background relationship where he is in the courtroom and he is able to correct the actions of his counsel. Mr. Fine. I would like to follow up on something that Judge Wood said or asked. Is it your contention that counsel cannot waive on behalf of his client the right to poll the jury? As a general principle of law, Your Honor, that is not Mr. Smigo's position. Mr. Smigo's position is that if counsel were in the courtroom with a party and the question were posed, does the party wish to poll the jury? If the answer were in the negative, a party would be bound by that statement. I see that I'm into my rebuttal time. I think Judge Flom had a question for you. Just one short question. Does the record indicate what ability Mr. Smigo had to communicate with the lawyers after his removal? There's no indication that he was able to communicate with his counsel. And that's important because in pages 8, 10, and 14 of the transcript, I believe, of the short appendix, rather, you can see on the docket where Mr. Smigo was able to communicate with the court only through video RITs or telephonic RITs that issued. In addition, Rushville is about two and a half hours away from Urbana, where this trial was held. And so if the jury went out at 1.06 and came back in at 3.30, then Mr. Smigo would have been still en route back to Rushville at the time when the verdict came in. All right, thank you. I'll give you some rebuttal time. Thank you, Chief Judge Wood. Mr. Elwood. Thank you. Good morning, Your Honor. Good morning. Good morning. Mr. Fine started his argument by pointing out that there are two questions in this case that necessitated a trial on all issues, a new trial on all issues. I think the important thing here is that the presence of the law school counsel disposes of both of the points that he makes. So there's a, I mean, I have two concerns. One is the lack of an appearance being filed by the professor. I mean, when law students argue in this court, the supervising attorney, normally a clinical professor or somebody of that sort, is right here in the courtroom and leaving the students alone. And actually, they file appearances. They do all sorts of things. So having students treated exactly the same as lawyers is a bit of an extension. I wonder, well, what if his mother had been in the courtroom? Maybe would that be OK, too? Because somebody would have popped up and said a word in his behalf. The second thing that's very troublesome, even though I understand this is a civil trial, not a criminal trial, is the notion that the court can throw a litigant out of the courtroom for no reason whatsoever. There's no indication Mr. Smigo was misbehaving. There's no indication of any other reason. The court doesn't say, well, the Rushville guards are about to go off their shift or anything. There's nothing. And I feel as though in a world where we have open courts and where litigants are entitled to bring their cases to those courts, to be told summarily, oh, but you're not going to be here is not consistent with that norm. I think in this case, if I could start with the comment about removing the litigant, in this case, again, I come back to the point that the counsel was present during that time. Well, the law students were present. We don't have any idea where the professor was. Well, and I'll get to that point in a second. The law students were present representing Mr. Smigo at the time he was removed. Second of all, we- So in the Central District of Illinois, is it permissible to have unsupervised law students handling trials? I have no comment on that, Your Honor. I don't think there's any evidence in this case that these were unsupervised. I think what we have here is speculation. Well, there's no appearance filed by Professor McCaft. I think that's correct. I don't believe there was. That, I think, is clear. I think that is correct from the status of this record. But this is an interesting situation. So you don't want to answer that question that I suppose it's possible to figure it out on my own. You don't know whether in the Central District of Illinois unsupervised law students are entitled to handle a trial. Your Honor, I have no idea how they conduct the general trials. But the rule that they operate under, 83.5, requires that. It says supervision and direction. Does it define what that supervision and direction is? My problem with the way the argument is being phrased here by my opponent, contending that there's a lack of supervision in this case, is that nothing was raised at the time. And imagine we get in a situation, Your Honor, where we have a trial that's conducted. And there's a question about the foundation of the admission of a document. And nobody says anything when the document is admitted. The trial just says, admitted. And we get on appeal and they say, well, they lack foundation when they offer that. You'd say, well, counsel, you should have raised that objection at the time. Because it would have allowed. Who was going to raise it? Mr. Smigo? Mr. Smigo. Who's the lay person? Are the law students going to object to themselves for being improper? No, it would be Mr. Smigo. How does he know? How does he even know that it's a legal issue? Isn't that up to the court to make sure that the court supervises the bar that practices before? It's not the parties. Well, I think the excerpt where the students, where Mr. Smigo was asked, do you want representation? Their supervisor was there. His name appears at the very bottom. That's the last time his name appears anywhere. My point is that Mr. Smigo was aware that they had a supervisor, and that this was a legal clinic, and that they were law students. And he's a very savvy litigant. We see his name quite often before the courts. He's not a newcomer to the litigation. And my point from a hypothetical I was making is this, in the foundational scenario that I was making, you would say, had you made an objection, there would have been an opportunity to cure. But I'm just saying that not all situations are those in which the represented party is the one who's making the objection. If it's the admission of evidence, as in your hypothetical, of course it's the lawyer on the other side who should. And we expect lawyers to do that. And the consequences are as you described. But when it's really something that's the party, that's where I get into the fact that actually governance of the bar is not the party's responsibility. It's the court's responsibility. And if it had turned out halfway through trial, a regular trial, that the person purportedly representing somebody had never been admitted to a bar, and they'd lied on their admission form, the court is the one that would take the action. Right. I guess I don't see the supervision as changing anything here, because if we remove this from the context of it. Well, it would mean that if that were the case, then we shouldn't have to have lawyers. We can always have law students. No, we have a procedure that allows for the use of law students under certain circumstances. And I think the court has recognized that that's a great benefit to the legal system and to the prison situation. But they don't have an independent standard that applies to them on how they're supposed to operate. I mean, they're counsel in the case. And really, if we remove this. They have to have a supervisor. Right, and all we have here is speculation that we don't. That's all we have. We have a little bit more, in that there is no appearance entered by any supervisor. The point is, if the student in the middle of the trial starts going off the rails, if the supervisor is in the courtroom, the supervisor simply stands up and represents the client. It's a joint representation, in some sense, of the supervisor and the student. That certainly could be. But in this case, I would bring the court back to what happened here. The judge, after receiving the verdict, asked the law student counsel, do you want me to poll the jury? And they said no. Yeah, and that's a mystery, too, because polling a 10-person jury couldn't possibly take more than a minute and a half. Well, we don't have to poll in every case, Your Honor. And I can say there's cases I've been involved in where I've not polled the jury. And I've not asked my client to do it. I've just said no, Your Honor, because it comes from the context. And that's what's so important about your Verser decision. Because in Verser, when this court took a look at what happened, and I think Verser's interesting, because we've kind of got a blend of stone, and we've got a blend of the polling issue. But I think the interesting part, if I may have a second here, when we look at page 742 and 743, this court makes a really interesting comment. It says, a reasonable party, again, this is in Verser, a reasonable party, taken into account. And then the court goes through and lists all the things that you found to be troubling in that case. Says, would likely have requested a poll of the jury. Mr. Verser was unable to observe or otherwise learn about these events, because he wasn't there and his counsel wasn't there. The distinction between that scenario and ours, of course, we have none of these inflaming situations, but counsel was there. And they had an opportunity to look at what happened. And they didn't see a deadlock jury. They didn't see a jury sending back questions. We don't have the question issue. But we didn't see the questions, the uncertainty. We didn't see the really odd statement that the juror made after the verdict came in, which, as the court said, a reasonable party taking all that in would look at that and say, hmm, is this a jury verdict that represents all the jurors? Might not. The problem was Mr. Verser wasn't there and his representative wasn't there. No one was there to pick up on all of those cues that you found so important and say, there might be a problem here. In our case, not only do we have someone there for Mr. Smiko, but we have none of these aggravating factors that would make any of us looking at a case go, something's not right here. I need to ask if the jury verdict is representative of each of the members. That's the difference between this case and Verser. And that's why we think what happened here was proper. And I think the court fully appreciates it. So the other thing that's troublesome about this case, and he makes a comment about this, is the judge's indication, he notes this in his July 18 order, that his routine practice before Verser was to send inmates, or whatever you call the Rushville people, back to their institution after the jury sent to deliberate. And again, there's a real tension between that practice and somebody's right, if they're comporting themselves appropriately, of course, to be in court. Your Honor, and I say this with all due respect, if this is troubling, end it, the practice. But does that mean that there's an error in this case that warrants a retrial? No, I don't think so. Because the court is very clear that Mr. Smiko was returned for the deliberations. When the jury came back, it was time to read the verdict. Nothing happened inflammatory. May I finish my sentence? Yeah, please do. Nothing happened inflammatory as in Verser. And I think it's very clear that Mr. Smiko was removed at that time. If I may make one last comment. Sure. Counsel made a remark about the evidence in the case suggesting that Mr. Smiko was removed at the time of launch. But I would say this. The judge specifically, one, he makes a specific finding, as to when he removed Mr. Smiko. But two, he says, in the same manner of policy as I did in Verser. Well, in Verser, we know from the decision that he was removed when the case was sent to the jury. So thank you. Thank you very much. And Mr. Fine, I'll give you a minute to rebut. Mr. Fine, under what authority should we challenge the central district rule, which is perhaps unique in the circuit? Because you don't need the supervision in the central district of an attorney, which you need in the northern district. And I think in the southern district of Indiana, in both district courts in Wisconsin, have no provision for representation. That's correct, Judge Flom. So you would say, is your argument in our supervisory role? That's correct, Judge Flom. Fraser v. Hebe establishes the right of superior courts to control membership requirements, bar membership requirements, of lower courts. Lemons v. Skidmore, a Seventh Circuit case, establishes the general, or rather, embodies the general right. But those are admissions to our court. I assume these law students are being admitted under an attorney in Illinois. In Fraser v. Hebe, it was the right to admissions in the district court, or admissions requirements in district courts. And in Lemons v. Skidmore, it related to a sound practice related to shackled prisoners. But the general proposition, of course, is that the Seventh Circuit has authority to require district courts to follow sound practices from the standpoint of judicial administration. And it is correct that the Central District of Illinois has rules that are unique among the districts in this circuit, in that there is no clear requirement of supervision. We cite the rules in our brief, and I'd be happy to discuss them now. But the takeaway, of course, is that there are far more procedural safeguards in place to ensure that a litigant is receiving procedural protections in those circumstances. What harms do you think occurred here? I mean, looking through the lens of harmless error, what harm occurred here? Your Honor, I think that the harm, this is the sort of case that falls into a category of cases where, because the harm is particularly difficult to calculate, a harmless error analysis is not appropriate. Because when litigants are represented by lawyers who are representatives who are not adequately supervised, it's difficult to quantify what the harm might have been in any specific case. In this case, it's likely that if a member of the bar was in court and saw the irregularity that took place in the record, that at a minimum. The irregularity is just a failure to poll, which isn't really an irregularity. That's something. The first irregularity, Judge Fahm, was the removal without any justification. And then counsel may go either way. I've personally never seen a lawyer pass up an opportunity to poll a jury. But that's another possible harm as well. I see that I'm well over my time. Well, thank you very much, Mr. Fine. And we appreciate your taking the appointment from the court. It's of great assistance to us and also to your client. Thanks as well to Mr. Elward. We'll take the case under advisement.